BROWN v. DEPARTMENT OF MILITARY AFFAIRS

1. QUO WARRANTO—LACHES—OFFICERS—SALARIES.
    Although the general rule is that laches is no defense where no prejudice or detriment is shown, a claimant of public office in *quo warranto* cannot sit idly by while another performs the duties of the office, as there is public detriment arising from the payment of more than one salary for the same office.

2. MILITIA—NATIONAL GUARD—PAY SCALE—STATUTES.
    Action of the quartermaster and the state military board in promulgating a different pay scale than that established by statute, was unauthorized and illegal (MCLA § 32.45).

3. OFFICERS—SALARIES—CONTRACTS—STATUTES.
    Salaries of public officers which are established by law are not determined by contract or agreement between the parties; the public employer cannot pay more than the law allows and the public employee cannot accept less.

4. OFFICERS—STATUTORY SALARY—WAIVER—PUBLIC POLICY.
    A waiver of statutory salary by a public officer is void as against public policy and a decision upholding a public offi-

REFERENCES FOR POINTS IN HEADNOTES
[1] 44 Am Jur, Quo Warranto § 63.
[2, 3] 43 Am Jur, Public Officers § 344 *et seq.*
[4–6] 43 Am Jur, Public Officers § 392.

cial's returning part of his salary to a county should be overruled because it departed from a long line of previous decisions and has never been followed.

5. Officers—Statutory Compensation—Waiver—Laches.

There can be no waiver of statutory compensation by a public employee or officer and the doctrine of laches does not apply where no detriment is shown.

6. Limitation of Actions—Wages—Notice of Claim—Militia—National Guard.

A claim for wages ripens when the service is performed and payday comes and the legislature has commanded that notice of intention to make a claim be filed within one year of the accrual of the claim against the state, therefore, a National Guard officer's claim for back pay and allowances should be determined in the light of such statutory provisions (MCLA §§ 600.6431[1], 600.6452[1]).

Appeal from Court of Appeals, Division 2, Bronson, P. J., and Fitzgerald and Churchill, JJ., affirming Court of Claims, William John Beer, J. Submitted September 14, 1971. (No. 35 June Term 1971, Docket No. 53,289.) Decided November 9, 1971.

30 Mich App 463 reversed.

Complaint by Lieutenant Colonel John P. Brown against the State of Michigan and the Department of Military Affairs for back pay and allowances. Judgment for plaintiff. Defendants appealed to the Court of Appeals. Affirmed. Defendants appeal. Reversed and remanded.

*William L. MacKay,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman* and *Charles D. Hackney,* Assistant Attorneys General, for defendants.

T. E. Brennan, J. Plaintiff filed action in the Court of Claims on February 7, 1968, alleging entitlement to approximately $24,000 in back pay and allowances accumulated during the period March 1, 1950, through June 30, 1967.

Plaintiff's claim is based upon service in the State Department of Military Affairs. That service began in December of 1947, at which time plaintiff was a captain with seven years longevity. He was promoted to the rank of major on June 26, 1951; and to the rank of lieutenant colonel on June 12, 1959.

During all of the years here in dispute, MCLA § 32.45 (Stat Ann 1961 Rev § 4.637) provided, in pertinent part, as follows:

"All officers shall receive for each day spent by them in actual service or on duty under the orders of the governor, who is authorized to determine when to place said officers on duty, the pay and allowances, including traveling allowances and all necessary expense for horses for mounted officers and increased pay on account of length of service as fixed by law or regulations for officers of the same rank in the service of the United States. * * * Pay for officers shall be computed by the army pay tables."

By PA 1967, No 150, the foregoing was repealed. In its place, MCLA § 32.513 (Stat Ann 1969 Rev § 4.678[113]) provided:

"Sec. 113. Officers and enlisted personnel of the state military establishment shall receive for each day spent by them on active state service under orders of the governor, who is authorized to determine when to place them on such duty, the pay and allowances provided for persons of the federal military forces of like grade or rank and years of service. Enlisted personnel so serving shall receive $3.00 per day allowance in addition to the pay herein author-

ized.   There is hereby appropriated each year from
the general fund, the sums necessary to implement
the provisions of this type active state service in-
cluding logistic costs."

Since the effective date of PA 1967, No 150, full
payment for military service has been made.   Like-
wise, plaintiff concedes that proper compensation
was paid him during the period prior to March 1,
1950.

On March 1, 1950, under the direction of then
Quartermaster General Colonel Herbert F. Layle,
a new system of pay for plaintiff and other military
officers was adopted.

Behind the new plan was a resolution of the state
military board, passed on January 17, 1950, recom-
mending to the Governor that the rates of pay of
military personnel be adjusted by ordering such
persons to actual duty for a fewer days per month.

Pursuant to that resolution, Colonel Layle pro-
ceeded to embark upon a study of the duties of the
various officers then in actual state service, compar-
ing their duties with those of regular army person-
nel, employees in the state civil service and persons
in private employment.

That study resulted in a new pay scale for the
plaintiff.

Since the statutory  " * * *  pay and allow-
ances, * * * for officers of the same rank in the
service of the United States * * * " exceeded the
quartermaster general's pay scale, a chart was pre-
pared which correlated the number of duty-days per
month for which the statutory compensation would
equal the revised pay structure.

In furtherance of this plan, plaintiff was period-
ically requested to apply to the Adjutant General of
Michigan for actual state duty employment.   These

applications, a sample of which is reproduced below[1] contained a specified number of duty-days. The following also appeared:

"b. I will not be or become liable to duty on that number of Saturdays or Sundays represented by subtracting the total number of duty days from 30; * * * ."

The 1950 pay plan did not affect the plaintiff's duty tasks. He continued in the same duties, the same hours, the same days as before.

On January 1, 1960, a new pay structure was adopted.

Under the new plan, each officer would request to be called to actual state duty for 30 days per month at his full rank, but at less longevity than he actually had.

This plan was authorized by the state military board on November 30, 1959, effective from and after January 1, 1960.

In several of the disputed years, the annual appropriation acts for the state military establishment, contained the following language:

"Except as otherwise provided by law, wherever the amount herein appropriated is less than the amount called for or required to be distributed by existing law, the state official or body responsible for the administration of the particular appropriation shall reduce the payments under the appropriation made in this act on a pro rata basis in such manner that such payments shall not exceed the appropriations herein contained."[2]

The Attorney General, representing the state, appeared and responded to plaintiff's claim.

---

[1] See Appendix.
[2] PA 1963, No 220; PA 1964, No 268; PA 1965, No 135; PA 1966, No 263.—REPORTER.

The Attorney General alleged that plaintiff was, at all times, paid according to law. In further defense, he set forth affirmatively that plaintiff had waived any sums over and above what he had actually received, and that in any event, the bulk of plaintiff's claim is barred by the statutory requirement for filing of notice of intent to make claim, RJA 6431, and the statute of limitations, RJA 6452. MCLA § 600.6431 (Stat Ann 1962 Rev § 27A.6431); MCLA § 600.6452 (Stat Ann 1962 Rev § 27A.6452).

The court of claims found for the plaintiff.

Its judgment was affirmed by a divided panel in the Court of Appeals; Judge FITZGERALD, with whom Judge BRONSON concurred, holding for plaintiff on all disputed points, and Judge Churchill, concluding that the statute of limitations applies.

We granted leave, partly to consider the impact of *Layle* v. *Adjutant General of Michigan* (1971), 384 Mich 638, and partly because the outcome of a goodly number of cases similar to this will be determined with finality by our decision.

*Layle* v. *Adjutant General of Michigan, supra,* is inapposite.

*Quo warranto* was sought in that case. The claim was held to be stale, and barred by *laches.* Although the general rule is that *laches* is no defense where no prejudice or detriment is shown, *Grix* v. *Liquor Control Commission* (1943), 304 Mich 269, a claimant of public office in *quo warranto* cannot sit idly by while another performs the duties of the office. There is public detriment arising from the payment of more than one salary for the same office. Where the effect of the claim is to impose a burden of double compensation upon the public authority, reasonable dispatch in making claim is required. Compare,

*Sullivan* v. *State Board of Tax Administration* (1939), 290 Mich 664.

In this case of Brown, there is no double salary. plaintiff performed all of the duties of the position he held, during the whole period in controversy, with the exception of one year, during which he was removed and later reinstated.[3]

Both the trial court and the Court of Appeals agreed that the action of the quartermaster and the state military board in promulgating a different pay scale than that established by statute, was unauthorized and illegal.

We agree. The device of calling the plaintiff for less than 30 duty days per month was sheer artifice, and had no relation to the actual days worked by the plaintiff. Similarily, the reduction of longevity was a mere subterfuge designed to subvert the statutory pay scale and frustrate the intent of the legislature.

Salaries of public officers which are established by law are not determined by contract or agreement between the parties. The public employer cannot pay more than the law allows. The public employee cannot accept less.

A waiver of statutory salary by a public officer is void as against public policy. *Lee* v. *Macomb County* (1939), 288 Mich 233; *Kaminski* v. *Wayne County Board of Auditors* (1938), 287 Mich 62; *Ruell* v. *Alpena* (1896), 108 Mich 290; *McQuaid* v. *Oakland County Board of County Auditors* (1946), 315 Mich 234; *Miller* v. *Wayne County Board of Auditors* (1879), 41 Mich 4. See, also, 70 ALR 972.

*Moll* v. *Wayne County* (1952), 332 Mich 274, is at odds with these precedents. There, the public official had returned part of his salary to the county, during tax-lean years of the great depression. It

---

[3] No decision upon the effect of that removal and reinstatement was made in the court of claims. That matter would have been reviewed as part of the audit ordered by the court of claims.

was held, in effect, that no unjust enrichment of the county was presumed to follow. *Laches* was also discussed. *Moll* should be overruled. It departed from a long line of previous decisions. It has never been followed.

In summary, there can be no waiver of statutory compensation by a public employee or officer. The doctrine of *laches* does not apply where no detriment is shown.

It remains to discuss the matter of notice of claim and the statute of limitations.

MCLA § 600.6431(1) (Stat Ann 1962 Rev § 27A-.6431[1]) provides:

"(1) No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths."

MCLA § 600.6452(1) (Stat Ann 1962 Rev § 27A .6452[1]) provides:

"(1) Every claim against the state, cognizable by the court of claims, shall be forever barred unless the claim is filed with the clerk of the court or suit instituted thereon in federal court as authorized in section 6440, within 3 years after the claim first accrues."

The Court of Claims found as a matter of fact, that plaintiff was ordered by his superior officers not to make his claim.

For this reason, both courts below concluded that the statutes quoted above were inapplicable.

We accept the factual finding and we are sympathetic with the reasoning by which they concluded that the statutes were inapplicable.

However, there is no exception noted in the statutes. The same legislative voice which commanded that plaintiff receive full army pay and allowances also commanded that notice of intention be filed within one year of the accrual of the claim. We can no more disregard the latter than the former.

A claim for wages ripens when the service is performed and payday comes. The Court of Appeals is reversed and the cause is remanded to the Court of Claims for determination of the amount due to plaintiff in light of the applicability of MCLA § 600.6431(1) (Stat Ann 1962 Rev § 27A.6431[1]) and MCLA § 600.6452(1) (Stat Ann 1962 Rev § 27A.6452[1]).

No costs, a public question being involved.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. G. KAVANAGH, and SWAINSON, JJ., concurred with T. E. BRENNAN, J.

WILLIAMS, J., did not sit in this case.

## APPENDIX

### STATE OF MICHIGAN
### MILITARY ESTABLISHMENT
### LANSING

201—Brown, J. (Off. MNG)        20 March 1950

SUBJECT: Application for Actual State Duty Employment

TO      : The Adjutant General of Michigan, Lansing, Michigan

THRU    : The Quartermaster General of Michigan, Lansing, Michigan

1. I hereby request that I be placed on actual state duty with the State Military Establishment, effective 1 May 1950, for a total of 27 days per month, with pay and allowances therefor as provided by law.

2. I understand that if ordered to actual state duty pursuant to this application:

a. I will accrue leave and retirement credits on the basis of the number of days per month to which ordered to actual state duty;

b. I will not be or become liable to duty on that number of Saturdays or Sundays represented by substracting the total number of duty days from 30;

c. If a member of the Michigan Air National Guard, I will not be entitled to receive flying pay unless specifically ordered to flying duty as pilot, copilot or airplane crew member and then only for the time being;

d. If ordered to actual state duty in response to this application, no employment contract shall result and I shall be and become liable to relief therefrom for misfeasance, malfeasance, nonfeasance, discontinuance of my assigned function or because of lack of funds with which to continue my employment.

Signature—John P. Brown

Named Type—John P. Brown

Service Number—0-420462

Grade and
Organization—Sv Co. 126 Inf