668 N.W.2d 623 (2003)
Mae A. BOOKER, Personal Representative of the Estate of Sanders S. Magee, Deceased, Plaintiff-Appellee,
v.
CITY OF DETROIT, Defendant-Appellant.
Mae A. Booker, Plaintiff-Appellant,
v.
City of Detroit, Defendant-Appellee.
Docket Nos. 121712, 121856, COA No. 219554.
Supreme Court of Michigan.
September 18, 2003.
On order of the Court, the applications for leave to appeal from the May 3, 2002, decision of the Court of Appeals are considered, and, pursuant to MCR 7.302(F)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals in part and REMAND this case to the trial court for further proceedings consistent with this order.
While expressing disagreement with the reasoning of Magee v. City of Detroit (Booker I), 203 Mich.App. 228, 511 N.W.2d 717 (1994), the Court of Appeals concluded that it was bound by that decisions conclusion that the city was required to follow foreclosure sale procedures in the General Property Tax Act (GPTA). 251 Mich.App. 167, 185, 650 N.W.2d 680 (2002). However, the GPTA provides:
The requirements of this act relating to the amount and imposition of interest, penalties, collection or administration fees, the procedures for collection of taxes, and the enforcement of tax liens are applicable to all cities and villages if not inconsistent with their respective charters or an ordinance enacted pursuant to their respective charters. [MCL 211.107(1) ]
Thus, the statute plainly provides that if a conflict exists between the GPTA and the city charter, the charter governs. It appears that the Court of Appeals decision in Booker I overlooked this provision in finding that the GPTA governs where a conflict exists. Accordingly, we reverse the Court of Appeal holding based on Booker I, and conclude that the foreclosure sale was valid under the controlling provisions of the city charter.
Further, we REVERSE the judgment of the Court of Appeals with regard to plaintiff's unjust enrichment claim. Under the particular circumstances of this case, in which the city has retained the plaintiff's tax payment after disposing of the property at a foreclosure sale, we find that city has received a benefit from plaintiff, which benefit it would be inequitable for the city to retain. Dumas v. Auto Club Ins. Ass'n, 437 Mich. 521, 546, 473 N.W.2d 652 (1991). Accordingly, we REMAND the case to the Wayne Circuit Court for reinstatement of the portion of the trial court's judgment awarding plaintiff damages on the unjust enrichment claim.
In all other respects, leave to appeal is DENIED.
TAYLOR, J., not participating.
YOUNG, JR., J., dissents and states as follows:
I dissent from the order reversing the Court of Appeals judgment in part and *624 remanding the case to the trial court for further proceedings. The disposition of this case has resulted in two published Court of Appeals opinions that present conflicting analyses with respect to the application of the General Property Tax Act (GPTA), M.C.L. § 211.1 et seq., to a dispute over foreclosed property. Nevertheless, because plaintiff prevailed in the trial court on claims unrelated to the application of the GPTA, and because the second Court of Appeals panels discussion of the GPTA is therefore merely dicta, the majority's order in this case constitutes an attempt to resolve a moot issue. Furthermore, I strongly dissent from the reversal of the Court of Appeals holding that the trial court erred in entering judgment in favor of plaintiff in the claim of unjust enrichment.
In 1984 plaintiffs property in Detroit was foreclosed upon by the county and was purchased by the state at the county's tax sale. In 1985 the city also obtained a judgment of foreclosure. Plaintiff redeemed within the redemption period under the GPTA, which was applicable to the county's foreclosure, and the State issued a reconveyance deed; however, plaintiff did not redeem within the time period established by the Detroit City Charter. In the meantime, plaintiff allegedly engaged in conversations with a sales representative in the city's Community and Economic Development Department, who advised him that if he paid his taxes he would not have to worry about his property being taken. Plaintiff paid the delinquent taxes in 1985, but the city did not reconvey the property to plaintiff and, instead, sold the property to a third party. The city in 1988 tendered a refund of the tax payment to plaintiff, but plaintiff refused to accept a refund and instead filed an action to quiet title and for an unlawful taking.
The Court of Appeals reversed the trial court's grant of summary disposition to the city and held that the city was not free to ignore the redemption provisions of the GPTA. Magee v. Detroit, 203 Mich.App. 228, 511 N.W.2d 717 (1994) (Booker I).[1] This holding was based on the following provisions in the GPTA:
The taxes on any lands returned as delinquent may be paid to the county treasurer at any time prior to the day of sale. After such petition is filed with the county clerk, payment of part of the taxes therein specified shall not stay proceedings thereon to enforce payment of such part of such taxes as are not paid, but such proceedings shall continue as to all unpaid taxes as herein provided. [MCL 211.106 (emphasis supplied).]
The authorities of any city ... which, by its charter, has the right to sell lands for unpaid taxes or assessments, may provide for judicial sale of such lands. Such sale shall be made on petition filed in behalf of the city ... in interest, and shall conform, as near as practicable, to the provisions as to sale in this act. [MCL 211.108 as quoted at 203 Mich.App. at 231-232, 511 N.W.2d 717 (emphasis supplied).]
The panel held that pursuant to 108, the city's sale had to be carried out by means conforming as near as possible to the GPTA; furthermore, the charter could not conflict with or contravene the GPTA. The panel further held that, pursuant to 106, even if plaintiff failed to redeem within the city's sixty-day redemption period, the city could not sell the property after plaintiff *625 paid up his taxes in October 1985. Because the record did not reveal when the sale was made, the panel held that it could not say that the sale was proper. Finally, the panel held that on remand plaintiff could file a motion in the trial court to amend his complaint to include a claim for unjust enrichment and attorney fees.
On remand, the trial court held that the city charter was inconsistent with the GPTA and that the provisions for sale in the GPTA trumped the charter provisions. Following a bench trial, plaintiff obtained judgment against the city in his newly added claims of unjust enrichment and promissory estoppel.
In a second published opinion, the Court of Appeals reversed and entered judgment for the city. 251 Mich.App. 167, 650 N.W.2d 680 (2002) (Booker II). The panel first noted that plaintiff did not receive fee-simple title to the property after the state quitclaimed it back to him. Pursuant to M.C.L. § 211.131c(4),
[a] redemption deed issued under this section does not vest in the grantee named in the deed any title or interest in the property beyond that which he or she would have owned, if title to the property had not vested in this state.... The deed ... revives all titles, liens, and encumbrances, with their respective priorities, as would have existed if title to the property had not vested in this state.... [Emphasis supplied.]
Thus, the panel held, because the city had already obtained its foreclosure judgment and because plaintiff did not redeem within the period established in the charter, title to the property vested in the city after the state quitclaimed it.
Next, the panel held that the trial court erroneously entered judgment in favor of plaintiff in the promissory estoppel claim. The panel held that the evidence presented at trialconsisting of plaintiffs sons testimony that the city's sales representative told plaintiff that if he paid his taxes he would not have to worry about his property being takendid not establish a clear and definite promise for purposes of the promissory estoppel doctrine.[2] The panel noted that plaintiff failed to present any evidence that the sales representative knew that the city had already obtained a foreclosure judgment or that the redemption period had already expired. Furthermore, the panel held, plaintiff did not establish that he reasonably relied on the representatives statements, which were made in July or August 1985, when plaintiff did not pay the taxes until September 1985. Finally, the panel held that the representative lacked the authority to approve the payment of taxes and that her unauthorized representations could not bind the city.
The panel held that the trial court erroneously entered judgment in favor of plaintiff in his unjust enrichment claim, because a taxpayer could not recover a voluntary payment of taxes, even if it turned out that the payment was in excess of the amount owed or if the taxes were void. The panel noted that plaintiff was partially at fault because he did not verify that he still owned the property when he paid the taxes.
Although this concluded the substantive portion of the second Court of Appeals opinion, the panel spent several additional pages creating dicta. First, the panel addressed the prior Court of Appeals opinion and held that it was wrongly decided in that it had overlooked the following key provision of the GPTA:

*626 The requirements of this act relating to the amount and imposition of interest, penalties, collection or administration fees, the procedures for collection of taxes, and the enforcement of tax liens are applicable to all cities and villages if not inconsistent with their respective charters or an ordinance enacted pursuant to their respective charters. In addition to the methods authorized under section 108, a city or village, which by its charter does not return its delinquent taxes to the county for collection, may enforce the tax liens for delinquent taxes, assessments, and charges by foreclosure proceedings or any other method authorized under statute, charter, or ordinance enacted pursuant to law or charter.... [MCL 211.107(1) (emphasis supplied).]
The panel next discussed the law-of-the-case doctrine, concluding that it was not bound by the doctrine to follow the prior Court of Appeals decision because the facts did not remain substantially or materially the same after the trial court conducted its remand proceedings and because the previous panel did not have the benefit of examining the city charter provisions at length when it rendered its decision. Nevertheless, the panel stated, because [the prior opinion] was a published opinion, we are bound to follow it under MCR 7.215(I)(1). 251 Mich.App. at 185, 650 N.W.2d 680. However, the panel declined to request a conflict panel because we conclude that the issue is not outcome determinative. Id.
The purpose of setting forth the foregoing lengthy history of this dispute is to illustrate the many factual and procedural idiosyncrasies present in this case, which I believe render the GPTA issue particularly unsuitable for appellate review. Because the trial court ultimately granted relief to plaintiff only in his promissory estoppel and unjust enrichment claims, the GPTA issue was thereafter moot. The second Court of Appeals opinionincluding its foray into the merits of the prior opinion, its determination that the law-of-the-case doctrine would not prevent it from reaching a different result on the GPTA issue but that it was, nevertheless, bound by MCR 7.215(I)(1) to follow the prior opinion, and its ultimate conclusion that everything it just said was meaningless because the GPTA issue was not outcome-determinativepresents a procedural quagmire that leaves intact the prior opinions GPTA holding yet, in dicta, firmly, and correctly in my view, discredits that holding. In this posture, the case is simply not amenable to this Courts review with respect to the merits of the GPTA issue. Therefore, although I agree with the majority's conclusion that the Booker I panel erred in holding that the GPTA prevails over conflicting city charter provisions, I would deny leave rather than issue an order that essentially reverses a moot ruling and at the same time affirms the Booker II panels dicta.
Moreover, I am utterly at a loss to comprehend how plaintiffs payment of delinquent taxes can possibly sustain a claim of unjust enrichment. The majority cites Dumas v. Auto Club Ins. Assn., 437 Mich. 521, 473 N.W.2d 652 (1991), for the general proposition that the receipt of a benefit from the plaintiff, which benefit it would be inequitable for the defendant to retain, constitutes unjust enrichment. I do not dispute this statement of the elements of an unjust enrichment claim. However, I note that the Dumas Court, quoting from the Court of Appeals opinion in that case, additionally imparted that
[t]he process of imposing a contractin-law or a quasi-contract to prevent unjust enrichment is an activity which should be approached with some caution.
*627 [Id. at 546, 473 N.W.2d 652 (emphasis supplied).]
See also Kammer Asphalt Paving Co. v. East China Twp. Sch, 443 Mich. 176, 185-186, 504 N.W.2d 635 (1993):
The remedy is one by which "the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received" to ensure that "`exact justice'" is obtained. Detroit v. Highland Park, 326 Mich. 78, 100, 39 N.W.2d 325 (1949), quoting Cascaden v. Magryta, 247 Mich. 267, 270, 225 N.W. 511 (1929). Because this doctrine vitiates normal contract principles, the courts "employ the fiction with caution, and will never permit it in cases where contracts, implied in fact, must be established, or substitute one promisor or debtor for another." [Detroit, supra at 100, quoting Cascaden, supra at 270.]
A plaintiff making a claim of unjust enrichment has the duty of establishing the nature of the transaction and the character of the liability arising therefrom as a prerequisite to his right to recover at all...." Michigan Educational Employees Mutual Ins. Co. v. Morris, 460 Mich. 180, 198-199, 596 N.W.2d 142 (1999), quoting Moll v. Wayne Co., 332 Mich. 274, 278-279, 50 N.W.2d 881 (1952). Further, [i]f the recipient of such a benefit has relied to his detriment on it, the plaintiff would be estopped from demanding reimbursement. Id., citing Leute v. Bird, 277 Mich. 27, 31, 268 N.W. 799 (1936); Porter v. Goudzwaard, 162 Mich. 158, 161-162, 127 N.W. 295 (1910).
In keeping with the principle, seemingly ignored by the majority, that the equitable doctrine of unjust enrichment operates in contravention of fundamental contract precepts and must therefore be applied sparingly and only where necessary to vindicate exact justice, I would affirm the holding of the Court of Appeals that plaintiff is not entitled to recover the city tax payment. Plaintiff has presented no evidence whatsoever that the city received any benefit from plaintiff other than the untimely payment of a past-due tax bill, more than two months after the city redemption period had expired. In my view, the retention by the city of payment for an overdue tax debt cannot be considered inequitable.
Moreover, the imposition of an equitable remedy in this situation is particularly inappropriate, where the consequences to be corrected might have been avoided if the victim of the misfortune had ordered his affairs with reasonable diligence. Spoon-Shacket Co. v. Oakland Co., 356 Mich. 151, 165, 97 N.W.2d 25 (1959). As the Booker II panel noted, it was unreasonable for plaintiff to pay the delinquent taxes, well after the commencement of the foreclosure action, without verifying his continued ownership interest in the property. Furthermore, and perhaps most important, plaintiff rejected the city's refund offer and should not at this late date be heard to claim that he is entitled, as a matter of equity, to that which he refused to accept some fifteen years ago.
Finally, I note that plaintiff, to the extent that the foreclosure of his property and his payment of delinquent taxes may have resulted in an overpayment, presumably had an adequate remedy at law. See MCR 211.53a ([a]ny taxpayer who ... pays taxes in excess of the correct and lawful amount due because of a clerical error or mutual mistake of fact ... may recover the excess so paid ... if suit is commenced within 3 years). Taxation is uniquely and extensively governed by constitutional and statutory provisions, see CF Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N.W. 352 (1935), and I question this Court's authority to invoke equitable principles *628 as a means of avoiding the requirements of the GTPA and the Detroit City Charter.
Accordingly, I dissent from the majority's order reversing in part the judgment of the Court of Appeals, and I would deny leave.
CORRIGAN, C.J., joins in the dissenting statement of YOUNG, JR., J.
NOTES
[1] Plaintiff Magee is the original property owner. In subsequent proceedings, Magees estate was represented by plaintiff Booker.
[2] The sales representative invoked her Fifth Amendment right at trial and refused to confirm or deny that she made these statements to plaintiff.